FILED

OCT - 9 2026

BONNIE HACKLER
Clerk, U.S. District Court
By______________
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF OKLAHOMA**

ZIA SHAIKH,
Plaintiff,

v. Case No. CIV-26-370-JAR

CITY OF ARDMORE, OKLAHOMA, a municipal corporation; and LORI LINNEY, in her official capacity as City Clerk of the City of Ardmore,
Defendants.

---

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

**(42 U.S.C. § 1983 — Fourteenth Amendment Procedural Due Process)**

Plaintiff Zia Shaikh, appearing pro se, for his Verified Complaint against Defendants, alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil-rights action under 42 U.S.C. § 1983 to remedy an ongoing deprivation of Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment. Defendant City of Ardmore has caused, and continues to cause, an indefinite suspension of Plaintiff's driving privileges through interstate Non-Resident Violator Compact ("NRVC") reporting, while refusing for more than three years to enter any final, written, appealable disposition of the underlying municipal citation, refusing to permit a nonresident to resolve the matter without personal appearance, and maintaining an arrest warrant. On August 31, 2026, the City's Municipal Judge put the City's position in writing: the court will not adjudicate the citation, will not permit a remote appearance, will not recall the warrant, and will not enter a disposition — and Plaintiff's license will be reinstated only if he pays the fine. (Exhibit 1.)

2. Plaintiff does not ask this Court to retry a traffic citation or to determine his guilt or innocence. He challenges the absence of constitutionally adequate process attending an indefinite deprivation of a protected interest. He seeks declaratory relief, preliminary and permanent injunctive relief compelling correction of the interstate reporting and a written disposition, and compensatory damages.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3)–(4) (civil rights). Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202.

4. Venue is proper under 28 U.S.C. § 1391(b)(1)–(2): Defendants reside in this District, and a substantial part of the events giving rise to the claims occurred in Carter County, Oklahoma, within the Eastern District of Oklahoma.

## III. PARTIES

5. Plaintiff Zia Shaikh is an adult individual residing in Arlington, Texas, who holds driving privileges issued by the State of New York.

6. Defendant City of Ardmore, Oklahoma, is a municipal corporation organized under Oklahoma law. It operates the Ardmore Municipal Court and, through its officers and employees, reports traffic dispositions and non-compliance to other states under the NRVC. It is a "person" under 42 U.S.C. § 1983 and enjoys no immunity from suit. Owen v. City of Independence, 445 U.S. 622 (1980).

7. Defendant Lori Linney is the City Clerk of the City of Ardmore, sued solely in her official capacity for prospective declaratory and injunctive relief as an official with authority over the City's records and the ministerial transmission of interstate reporting concerning the citation at issue. No damages are sought against her.

## IV. FACTUAL ALLEGATIONS

### *A. The citation, the not-guilty plea, and the court's written refusal of any remote hearing*

8. On May 5, 2023, Plaintiff, a nonresident of Oklahoma, was issued Ardmore Municipal Citation No. E00003162 alleging a municipal speeding violation. The citation states a scheduled fine of $121.00.

9. Plaintiff was released at the scene on a signed personal recognizance. No cash bond was posted or required, and none has ever been posted in the case.

10. Plaintiff timely contested the citation. In May and June 2023 he submitted a written discovery request and adjournment request, a motion to dismiss, a renewed motion to dismiss with notice of appearance by telephone, and a motion for recusal. He requested to appear remotely or to resolve the matter on written submissions because he resides several states from Oklahoma.

11. By letter dated May 11, 2023, on City letterhead and signed by the Municipal Judge, the court confirmed that it "has accepted your plea of **not guilty**" and set trial for July 7, 2023. In the same letter the court stated, in writing: "*we will not be doing a Zoom video call or phone call for your trial, please make arrangements to be in court on that date.*" The City thereby refused, in writing and at the outset, any remote or documentary means by which a nonresident could obtain adjudication.

12. On May 22, 2023, the Municipal Court transmitted to Plaintiff its own Abstract of Court Record for the citation. That abstract shows no plea of guilty or nolo contendere, no bond forfeiture, no court conviction, no conviction date, and no fine or costs assessed; it bears only the handwritten notation "TRIAL July 7th."

13. By letter dated June 27, 2023, the Municipal Judge confirmed that Plaintiff's request for dismissal had been denied following a telephone conversation and that the July 7, 2023 trial date stood. No written order on the motion to dismiss, the renewed motion, or the recusal motion was ever entered.

14. On or about August 18, 2023, the municipal court issued a Failure-to-Appear Warrant for Plaintiff's arrest, reciting "BOND: $121.00 + 60.00W + 42.35 CA FEE = 223.35." The $121.00

is the scheduled fine printed on the citation; the $60.00 is a warrant fee; and the $42.35 is exactly thirty-five percent of the $121.00 fine — the collection-agency fee Oklahoma municipalities add when a fine is referred to a private collection agency. The warrant remains outstanding and has never been recalled.

15. The collection fee establishes that, by August 18, 2023, the City had referred the scheduled fine on Citation No. E00003162 to a collection agency. Upon information and belief, after diligent inquiry — including the court's own abstract showing no conviction, the absence of any posted bond capable of forfeiture, the City's failure to identify any judgment in two proceedings before the Supreme Court of Oklahoma, the Municipal Judge's August 31, 2026 letter identifying no judgment or adjudication, and the City's refusal to produce its docket in response to Plaintiff's written requests of June 1, 2026 and September 10, 2026 — no judgment, conviction, or adjudication of the citation has ever been entered. The City referred an unadjudicated citation to collections and reported it interstate as a delinquency. In the alternative, if the City contends that any disposition was entered, it was entered in Plaintiff's absence after the court had refused him any remote means of appearing, was never served on or disclosed to Plaintiff, and has never been produced despite repeated requests; Plaintiff reserves the right to seek its vacatur in the issuing court and to amend this Complaint accordingly.

***B. Interstate reporting and the indefinite suspension***

16. Notwithstanding the absence of any written disposition, the City reported the matter interstate under the NRVC as unresolved or non-compliant. The August 18, 2023 warrant bears the notation "SUSPENDED 8/23/23."

17. Under the NRVC, a driver's home state suspends driving privileges upon the issuing jurisdiction's report of non-compliance and lifts the suspension only upon the issuing jurisdiction's report of compliance or resolution. The City's report is therefore the direct and continuing cause of the suspension.

18. Acting on the City's report, the New York Department of Motor Vehicles suspended Plaintiff's driving privileges effective July 31, 2024. The suspension is designated "Pending Submission to Court — Out of State," references the Ardmore citation, and is indefinite. It has remained continuously in force from July 31, 2024 to the present.

19. Plaintiff first learned the specific NRVC basis for the suspension upon obtaining his New York driving abstract on or about January 31, 2026.

20. Each month the City has continued to maintain the citation as unresolved, to maintain the outstanding warrant, and to maintain its NRVC non-compliance report, thereby continuously renewing the deprivation.

21. Plaintiff, directly and through Baari Ardmore LLC, a company he operates, owns and manages rental real property in Ardmore, Carter County, Oklahoma, and in Sulphur, Murray County, Oklahoma. The Sulphur rental property was destroyed by the tornado that struck Sulphur on April 26, 2024; it has not been rebuilt, its tenants are gone, and property taxes on it have gone unpaid since 2023. Rebuilding and managing that property, and managing the Ardmore property, require Plaintiff's periodic physical presence — to inspect the premises, meet insurance adjusters, contractors, and prospective tenants, and supervise repair, rebuilding, turnover, and maintenance. Because of the outstanding warrant, Plaintiff cannot travel to

Ardmore or Sulphur without risk of custodial arrest, and has been unable to rebuild or manage his Oklahoma property in person. That inability is ongoing and is causing continuing loss of rental income, continued deterioration of the property, accruing tax delinquency, and loss of business opportunity that cannot be calculated or restored after the fact.

***C. Plaintiff exhausted every available state avenue; the City's written refusal of August 31, 2026***

22. On February 2, 2026, Plaintiff transmitted to the Ardmore Municipal Court a Motion to Enter Disposition and Transmit NRVC Clearance, and on February 9, 2026 a Motion for Determination on Written Submissions and Waiver of Personal Appearance. Neither was acted upon.

23. On February 2, 2026, Plaintiff transmitted to the District Court of Carter County an Emergency Verified Petition for Writ of Mandamus and Prohibition, with follow-up correspondence on March 5, 2026. No case number issued and no ruling was made.

24. Plaintiff then sought extraordinary relief in the Supreme Court of Oklahoma. In Case No. 123,863 the Court declined original jurisdiction and closed the matter (notice of April 21, 2026). In Case No. 124,067, after ordering responses, the Court denied the application to assume original jurisdiction on June 15, 2026, without reaching the merits. Plaintiff discloses these proceedings in candor; none produced a written municipal disposition, a warrant recall, or any avenue of review.

25. On June 1, 2026, Plaintiff presented a notice of claim to the City under the Oklahoma Governmental Tort Claims Act, and separately requested from the City Clerk certified records of the case and the status of the warrant. On July 16, 2026, the City's insurer, the Oklahoma Municipal Assurance Group, denied the claim on timeliness grounds without addressing the merits. The records request received no response of any kind.

26. On June 18, 2026, Plaintiff filed in the Municipal Court a Motion to Recall Warrant, Permit Virtual Appearance, Set Matter for Adjudication, and Enter Written Disposition — asking only for the process a defendant is owed: a hearing he could attend, an adjudication, and a written order.

27. On August 13, 2026, Plaintiff transmitted to the City Attorney, City Manager, City Clerk, and OMAG a formal settlement demand and notice of intent to sue, enclosing a copy of a complaint substantially identical to this one. Plaintiff followed up by telephone. Neither the City nor OMAG responded.

28. By letter dated August 31, 2026, on Municipal Court letterhead and signed by the Municipal Judge (Exhibit 1), the court **denied** Plaintiff's June 18 motion in its entirety — refusing to recall the warrant, refusing a virtual appearance, refusing to set the matter for adjudication, and refusing to enter a written disposition. The letter then stated: "*The above listed warrant is three years old and at this time to properly take care of it you will need to send in a cashier's check in the amount of $223.35. This will release the warrant and the paperwork for the reinstatement of your license will be mailed to you promptly.*"

29. The August 31, 2026 letter is the City's definitive written statement of its position: it will not adjudicate the citation; it will not afford Plaintiff any hearing, remote or otherwise; it will not

enter any disposition; and it will reinstate Plaintiff's driving privileges only upon payment of the fine and fees. The letter identifies no judgment, conviction, or prior adjudication. It confirms that reinstatement of Plaintiff's license is a ministerial act the City can perform "promptly," and that the sole barrier the City has erected to that act is payment of an unadjudicated fine.

30. On September 10, 2026, Plaintiff served on the Clerk of the Municipal Court, the City Clerk, and the City Attorney a written request under the Oklahoma Open Records Act, 51 O.S. § 24A.1 et seq., for a certified copy of the docket sheet and of any judgment, plea, fine assessment, collection referral, and NRVC transmission in the case, expressly stating that he was entering no plea and making no payment. The docket of Plaintiff's own case is uniquely within the City's possession and control.

31. The City has thus been given every opportunity, over more than three years and through every forum available, to provide the process the Constitution requires. Its answer, in writing, is that no process will be provided and that Plaintiff must pay. Plaintiff has no adequate remedy at law.

## V. MUNICIPAL POLICY AND CUSTOM (MONELL)

32. The deprivation alleged results from policies and customs of the City of Ardmore, adopted or ratified by its final policymakers, including: (a) reporting nonresident traffic matters to home states as non-compliant under the NRVC without first entering a final, written, appealable disposition; (b) conditioning any adjudication of a fine-only municipal traffic matter on the defendant's in-person appearance — announced in writing by the Municipal Judge on May 11, 2023 and reaffirmed on August 31, 2026 — thereby denying nonresidents any practicable means of resolution or review; (c) maintaining failure-to-appear warrants indefinitely on matters the City declines to adjudicate; (d) referring the scheduled fine on an unadjudicated citation to a private collection agency and reporting it as a delinquency; (e) withholding from a nonresident defendant the docket and records of his own case despite written requests; (f) conditioning warrant release and license reinstatement solely upon payment of an unadjudicated fine while refusing any hearing — stated in writing by the Municipal Judge on August 31, 2026; and (g) failing to provide any procedure by which a nonresident may obtain a written disposition or correction of erroneous or indefinite interstate reporting. These policies are the moving force behind the constitutional deprivation. Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

33. The City's persistent course of conduct over three years — across multiple written requests, a mandamus petition, two Supreme Court proceedings, a tort claim, a formal demand, and a written judicial denial — evidences a deliberate and settled custom rather than isolated inadvertence.

## VI. THIS ACTION IS PROPERLY BEFORE THIS COURT

34. **Timeliness.** Plaintiff's claims are timely under the two-year limitations period borrowed from 12 O.S. § 95(A)(3). The deprivation is a continuing violation renewed each day the City maintains its non-compliance report, the warrant, and the unresolved citation, and was affirmatively renewed by the City's written refusal of August 31, 2026; and Plaintiff did not learn the NRVC basis for the suspension until on or about January 31, 2026. See Wallace v. Kato, 549 U.S. 384 (2007).

35. **No state judgment; Rooker-Feldman inapplicable.** Upon information and belief, for the reasons stated in Part IV above, no state court has entered any judgment against Plaintiff. Plaintiff is not a state-court loser seeking review of a state judgment; he complains of the absence of any judgment and of the process attending an administrative deprivation. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005). Should any undisclosed judgment be produced, Plaintiff will seek its vacatur in the issuing court and amend.

36. **No conviction; Heck inapplicable.** Upon information and belief, no conviction or sentence exists: the court accepted a plea of not guilty, its own abstract records no conviction, no bond existed to forfeit, its August 31, 2026 letter identifies no adjudication, and no disposition has ever been produced. Plaintiff does not challenge the validity of any conviction; he challenges the process attending an indefinite administrative deprivation and the referral of an unadjudicated citation to collections. Heck v. Humphrey, 512 U.S. 477 (1994), has no application.

37. **Younger abstention inapplicable.** There is no ongoing state proceeding in any meaningful sense. The City has not prosecuted the citation or set it for trial in more than three years, and on August 31, 2026 its court expressly refused to set the matter for adjudication or to permit Plaintiff any appearance. There is accordingly no state forum in which Plaintiff's federal claims can be raised. Abstention is further inappropriate because Plaintiff seeks damages, which a federal court may not dismiss under Younger. See Younger v. Harris, 401 U.S. 37 (1971); Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982); Deakins v. Monaghan, 484 U.S. 193 (1988).

38. **No judicial defendant.** Plaintiff has not sued any judge. The claims run against the municipality for its policies — including the policy its judge articulated in writing — and against an official in her official capacity for prospective relief concerning ministerial reporting functions.

## VII. COUNT I — 42 U.S.C. § 1983: PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)

39. Plaintiff incorporates all preceding paragraphs.

40. Plaintiff possesses a constitutionally protected property and liberty interest in his driver's license and continued driving privileges. Bell v. Burson, 402 U.S. 535, 539 (1971).

41. Acting under color of state law, Defendants deprived and continue to deprive Plaintiff of that interest through indefinite NRVC non-compliance reporting causing an indefinite out-of-state suspension — without any final written disposition, without a meaningful opportunity to be heard, and without any available avenue of review — and have now stated in writing that the license will be restored only upon payment of an unadjudicated fine. Conditioning the return of a protected interest on payment while refusing any hearing is the precise deprivation Bell v. Burson condemned. Weighing the private interest, the risk of erroneous deprivation, the value of additional safeguards, and the government's interest, the process afforded is constitutionally inadequate. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

42. The City's policies and customs described above are the moving force behind the deprivation.

## VIII. COUNT II — 42 U.S.C. § 1983: DEPRIVATION OF LIBERTY / MAINTENANCE OF WARRANT WITHOUT PROCESS

43. Plaintiff incorporates all preceding paragraphs.

44. Defendant City maintains an outstanding arrest warrant arising from a matter it has refused, in writing, to adjudicate, and has stated that the warrant will be released only upon payment. Maintaining an open-ended threat of custodial arrest as leverage to compel payment of an unadjudicated fine, while withholding any means of resolution consistent with due process, deprives Plaintiff of liberty without due process of law.

## IX. DAMAGES

45. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer economic and non-economic injury.

46. **Economic damages:** the loss of driving privileges and interstate mobility for approximately twenty-five continuous months and counting; interference with, and lost income and business opportunity from, his business and livelihood, which depend on the ability to travel and drive; out-of-pocket transportation and alternative-travel expenses; and filing, administrative, mailing, and related costs incurred over more than three years.

47. **Emotional distress and mental anguish:** sustained anxiety, fear, and distress over a period of years, including a persistent and reasonable fear of custodial arrest from the outstanding warrant; acute apprehension and hypervigilance in the presence of, or when approached by, law-enforcement officers, such that ordinary encounters provoke fear of detention; the inability to travel to or through Oklahoma; and the humiliation, sleeplessness, and psychological burden of living for years under an unresolved warrant and an indefinite suspension he has been powerless to end. These injuries are set forth in the Declaration of Zia Shaikh filed herewith.

48. Plaintiff's damages are continuing and are reasonably valued at not less than $350,000.00, subject to proof at trial. Recovery under § 1983 is not limited by the damages caps of the Oklahoma Governmental Tort Claims Act.

## X. RESERVATION

49. Plaintiff reserves the right to amend, upon discovery, to name individual officials in their individual capacities and to seek punitive damages to the extent the evidence shows any individual acted with reckless or callous indifference to Plaintiff's federally protected rights. Smith v. Wade, 461 U.S. 30 (1983).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendants' indefinite NRVC non-compliance reporting, refusal to adjudicate or to enter a written, appealable disposition, maintenance of an arrest warrant on a matter they refuse to adjudicate, and conditioning of license reinstatement on payment of an unadjudicated fine violate the Due Process Clause of the Fourteenth Amendment;

B. Enter preliminary and permanent injunctive relief (i) enjoining Defendants from continuing to report Citation No. E00003162 to any state as unresolved or non-compliant, (ii) directing Defendants to transmit to the New York Department of Motor Vehicles an NRVC clearance and notice of resolution sufficient to lift the July 31, 2024 suspension, (iii) directing Defendants to recall the August 18, 2023 Failure-to-Appear Warrant, and (iv)

directing Defendants to enter a final, written, appealable disposition of Citation No. E00003162;

C. Award compensatory damages against Defendant City of Ardmore, including for economic loss and for emotional distress and mental anguish, in an amount to be proven at trial but not less than $350,000.00;

D. Award Plaintiff his costs of suit; and

E. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**Zia Shaikh, Plaintiff Pro Se**
300 E. South St., Unit 391, Arlington, TX 76004
(469) 702-8955 • Ardmorerental@outlook.com
Dated: October 1, 2026

**VERIFICATION**

I, Zia Shaikh, declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that I am the Plaintiff, that I have read the foregoing Verified Complaint, and that the factual allegations therein are true and correct to the best of my knowledge, information, and belief.

Executed on October 1, 2026, at Arlington, Texas.

**Zia Shaikh**